UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                Case No. 1:23-cr-20373

v.                                               Honorable Thomas L. Ludington
                                                      United States District Judge

JULIEN BARNES,

       Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO QUASH**

On June 28, 2023, the Government charged Defendant Julien Barnes in a two-count indictment with (1) possession with the intent to distribute fentanyl, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi), and (2) felon in possession of a firearm, 18 U.S.C. § 922(g)(1). Defendant filed a motion to quash the search warrant that led to these charges on June 11, 2024. He argues that the information in the affidavit supporting the warrant was stale, such that the warrant lacked probable cause. He also contends that the good-faith exception to the exclusionary rule is inapplicable, so evidence seized during the warrant's execution is inadmissible. Both arguments lack merit, so Defendant's Motion will be denied.

I.

A.

On June 28, 2022, the Bay Area Narcotics Enforcement Team ("BAYANET") obtained a search warrant that set the stage for this case. ECF No. 27 at PageID.110–12; *see also* ECF No. 19 at PageID.67, ¶ 2; ECF No. 19-1 at PageID.86–87. The warrant authorized BAYANET to search two properties in Saginaw, Michigan—219 S. 4th Street ("4th Street Property") and 1109 S. 25th Street ("25th Street Property")—Defendant Julien Barnes's person, and a van. ECF No. 19-1 at

PageID.86–87. To support probable cause for the search, a BAYANET detective offered a six-page affidavit. *Id.* at PageID.80–85.

The affidavit asserts that BAYANET investigated Defendant's alleged drug operation, detailing a multi-faceted investigation that included several drug sales. *Id.* at PageID.81–83. First, the affidavit details a controlled drug buy that BAYANET executed on December 2, 2020—over eighteen months before BAYANET obtained the warrant.[1] *Id.* at PageID.81. For that buy, a BAYANET informant bought drugs from a suspect known as "Juiceman." *Id.*

Second, the affidavit describes another person who often bought fentanyl and heroin from "Juiceman" in an *uncontrolled* setting and describes the car "Juiceman" used for these sales. *See id.* To that end, the most recent uncontrolled sales were on March 13, 2022, about fifteen months after the first controlled buy and three months before BAYANET obtained the search warrant. *See id.* The affidavit proceeds to explain that BAYANET confirmed that Defendant had a Facebook profile with the username "Juiceman" based on information that the buyer provided. *Id.* In addition, BAYANET found a YouTube video allegedly featuring Defendant with a car matching the description the buyer gave BAYANET. *Id.* And BAYANET detectives reported seeing this car at the 4th Street Property within a week of BAYANET obtaining the warrant. *Id.*

Third, the affidavit recounts a second controlled buy that BAYANET conducted "within the . . . 72 hours" before obtaining the search warrant. *Id.* at PageID.81–82. For this second controlled buy, BAYANET used an informant to buy a substance that tested positive for cocaine from Defendant at the 4th Street Property. *Id.*

---

[1] A controlled drug buy is "[t]he purchase of contraband by an undercover officer or an informant for the purpose of setting up and arrest of the seller." *Controlled Purchase*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also United States v. Sanders*, 106 F.4th 455, 459–60 (6th Cir. 2024) (en banc).

Fourth, the affidavit alleges that BAYANET performed a third controlled buy—also "within the . . . 72 hours" before it obtained the search warrant. *Id.* at PageID.82. Like the other controlled buys, BAYANET used an informant to buy drugs from Defendant. *Id.* But this third sale was more mobile. *See id.* Indeed, the affidavit states that BAYANET tailed Defendant as he drove from the 4th Street Property to the 25th Street Property in the van defined in the search warrant. *See id.* Once he arrived at the 25th Street Property, Defendant sold BAYANET's informant a substance that again tested positive for cocaine.[2] *Id.*

Fifth, the affidavit states that BAYANET observed Defendant engage in suspected drug-related activity on June 27, 2022—the day before BAYANET received the search warrant. *Id.* at PageID.82–83. On that front, the affiant BAYANET detective saw someone in a car give Defendant a trash bag with something in it at the 4th Street Property. *Id.* at PageID.83. The affiant observed Defendant put the trash bag inside the 4th Street Property house, before driving to the 25th Street Property. *Id.* Based on prior investigations, training, and experience, the affiant BAYANET detective believed this activity was a drug exchange. *Id.*

Sixth, based on the investigation, the affidavit described the evidence BAYANET expected to find at the 4th and 25th Street Properties:

> Controlled substances including but not limited to: heroin, cocaine, crack cocaine, and methamphetamine; proceeds derived from the sale and or distribution of controlled substances; equipment, paraphernalia, packaging materials and or items related to the preparation, sale and or distribution of controlled substances including but not limited to scales, grinders, mixing or cutting or diluting agents, computers and or cellular telephones and or other means of electronic communications and the contents thereof; records relating to the obtaining, manufacture, processing,

---

[2] The affidavit indicates that BAYANET used the same informant for the second and third controlled buys. *See* ECF No. 19-1 at PageID.81–82. This informant told BAYANET that Defendant used the 25th Street Property to sell drugs often. *Id.* at PageID.82. But the affidavit provides no details about these other alleged sales. *See generally id.*

> compounding, sale, and or distribution of controlled substances whether in written form or otherwise; photographs or video or other electronic depictions of controlled substances, and or proceeds derived from the sale or distribution of controlled substances, and or persons and or places involved in the obtaining, manufacture, processing, compounding, sale and or distribution of controlled substances; firearms and or ammunition; records and or documents or data of whatever nature and/or type showing evidence of ownership, occupancy, residence and or control of the location searched and or the items found therein and or linking persons known or unknown to the searched premises and or contents; financial records.

*Id.* at PageID.80–81.[3]

All said, on June 28, 2022, concluding BAYANET's affidavit established probable cause, Judge M. Randall Jurrens of the Saginaw County, Michigan 70th District Court issued a warrant to search the 4th and 25th Street Properties, Defendant's person, and Defendant's van. *See id.* at PageID.86–87.

**B.**

BAYANET executed the search the next day. ECF No. 27 at PageID.110. BAYANET first spotted Defendant driving and conducted a traffic stop, searching Defendant and his van. *See id.* at PageID.110–11. BAYANET seized $2,200 from the van. *See id.* at PageID.111.

BAYANET then searched the 4th Street Property and seized several drug-related items. *See id.* at PageID.111; *see also* ECF No. 19-1 at PageID.89–91 (itemizing the materials seized from the 4th Street Property). On that score, BAYANET seized fentanyl, crystal methamphetamine, two digital scales (which field tested positive for cocaine), and other paraphernalia with drug residue on them. ECF No. 27 at PageID.111. And BAYANET seized a

---

[3] For the most part, the rest of the affidavit explains that, in the affiant's experience, BAYANET would likely find the evidence it sought in the places described in the search warrant. *See* ECF No. 19-1 at PageID.84–85.

pistol that it found in one of the 4th Street Property's bedrooms. *Id.*; ECF No. 19-1 at PageID.90. That same day, BAYANET searched the 25th Street Property. ECF No. 27 at PageID.111–12. There, BAYANET seized 91.09 grams of fentanyl, 503.2 grams of marijuana, "sandwich bags, a digital scale, and a measuring cup that all . . . tested positive for cocaine." *Id.*

C.

Under an indictment returned on June 28, 2023, the Government charged Defendant with two counts: (1) possession with the intent to distribute fentanyl, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi); and (2) being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). ECF No. 1 at PageID.1–3. On June 11, 2024, Defendant filed this Motion to Quash the search warrant and suppress the evidence BAYANET seized during its search. ECF No. 19. In essence, Defendant argues that BAYANET's warrant affidavit did not provide probable cause for the searches. *See id.* at PageID.67–71, 73–74.

II.

The federal constitution applies to warrants issued in state courts. *United States v. Helton*, 35 F.4th 511, 517 (6th Cir. 2022). Under the Fourth Amendment, a judge may issue a search warrant only "upon probable cause." U.S. CONST. amend. IV. Probable cause is an inexact standard—but "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). Indeed, courts define probable cause as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (cleaned up). When determining whether a warrant application's supporting affidavit establishes probable cause, an issuing judge must "make a practical, common-sense decision whether, given all the circumstances" described in the affidavit, "there is a fair probability that" officers will find

"contraband or evidence of a crime . . . in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

In reviewing an issuing judge's probable cause determination, courts must ensure that the circumstances gave the judge a "substantial basis" for his or her conclusion. *Gates*, 462 U.S. at 238–39. Reviewing courts must not rubber-stamp the issuing judge's determination. *See United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc). Still, reviewing courts must give the issuing judge's determination "'great deference'" and only reverse the issuing judge's probable-cause determination if it was arbitrary. *Id.* (quoting *Gates*, 462 U.S. at 236); *see also United States v. Greene*, 2501 F.3d 471, 480 (6th Cir. 2001). And a court's review must stay within the four corners of the warrant's affidavit. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).

### III.

Defendant's argument has two layers. Defendant first argues that the information in BAYANET's affidavit was stale, so the affidavit did not establish probable cause to search the 4th and 25th Street Properties. *See* ECF No. 19 at PageID.73–75. As a result, Defendant seeks to suppress all evidence seized during the searches. *Id.* Defendant then argues that the exclusionary rule's good-faith exception does not apply. *See id.* at PageID.76–77. Both arguments lack merit.

### A.

Starting with staleness, BAYANET's affidavit was not stale and established probable cause. Because evidence "is often moved from place to place, information about its whereabouts can grow stale over time." *United States v. Church*, 823 F.3d 351, 356 (6th Cir. 2016). And because stale information cannot establish a fair probability that officers would find specific evidence at the relevant location during a search, stale information cannot establish probable cause. *United States v. Aboud*, 438 F.3d 554, 572 (6th Cir. 2006); *United States v. Perry*, 864 F.3d 412, 414–

15 (6th Cir. 2017) (noting courts cannot rely on stale information throughout probable cause determinations).

Whether an affidavit's information is stale is a case-by-case analysis. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (citing *Sgro v. United States*, 287 U.S. 206, 210–11 (1932)). Under this analysis, "the length of time between the events listed in the affidavit and the application for the warrant" is salient but not dispositive. *Id.* At its core, the staleness analysis turns on "'the inherent nature of the crime'" and whether it establishes that officers have a fair probability of finding evidence at the searched property when they search it. *Spikes*, 158 F.3d at 923 (quoting *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). In that vein, the Sixth Circuit has recognized four factors to guide staleness determinations: (1) "the character of the crime"; (2) "the criminal"; (3) "the thing to be seized"; and (4) "the place to be searched." *United States v. Abernathy*, 843 F.3d 243, 250 (6th Cir. 2016) (citing *United States v. Hammond*, 351 F.3d 765, 771–72 (6th Cir. 2003)). As explained below, each factor militates against staleness, defeating Defendant's argument.

1.

Beginning with the first factor—"the character of the crime"—courts assess whether the alleged crime was a "chance encounter in the night" or ongoing. *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006). Where, as here, the crime involved drug trafficking, whether the trafficking was ongoing "exists upon a continuum ranging from an individual who effectuates the occasional sale" from his or her personal supply, "to an . . . established and notorious drug den." *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006). When the affidavit's information suggests that the crime involved an ongoing drug enterprise, the affidavit's information is seldom stale. *See, e.g.*, *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) ("Evidence of ongoing

criminal activity will generally defeat a claim of staleness.") (twenty-three-month-old controlled drug buy from ongoing enterprise not stale); *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998) (four-year-old evidence coupled with recent surveillance not stale when ongoing drug trafficking); *United States v. Hammond*, 351 F.3d 765, 771–72 (6th Cir. 2003) (four-month-old information not stale); *United States v. Thomas*, 605 F.3d 300, 309–10 (6th Cir. 2010) (eight-month-old information not stale); *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017) (three-week-old drug buy not stale); *United States v. Hall*, 8 F. App'x 529, 533–34 (6th Cir. 2001) (four-day-old information not stale); *United States v. Bryant*, 145 F. App'x 95, 98 (6th Cir. 2005) (information obtained "within the last 72 hours" not stale); *United States v. Grooms*, 566 F. App'x 485, 489 (6th Cir. 2014) (five-month-old information not stale); *United States v. Sinclair*, 631 F. App'x 344, 348 (6th Cir. 2015) (fifteen-day-old information not stale).

a.

Before addressing whether BAYANET's affidavit describes ongoing drug trafficking, this Court must address a threshold claim Defendant raises. Defendant argues, citing *United States v. Hython*, 443 F.3d 480 (2006), that this Court cannot consider BAYANET's second and third controlled buys in its staleness analysis because the affidavit did not provide the specific dates when BAYANET conducted these buys. *See* ECF No. 19 at PageID.74–76. On that front, Defendant argues that the affidavit stating that BAYANET executed the second and third controlled buys "within . . . 72 hours" of the warrant application, ECF No. 19-1 at PageID.81–82, cannot refresh the staleness clock.[4] *See* ECF No. 19 at PageID.74–76.

---

[4] Many cases state that newer corroborating evidence can "refresh" otherwise stale evidence. *See e.g., United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988). Since the Sixth Circuit identified the four staleness factors, it has treated "refresh" evidence as a component of the first factor. *See, e.g., United States v. Spikes*, 158 F.3d 913, 923–24 (6th Cir. 1998). That is because refresh evidence suggests that a crime is ongoing. *See United States v. Thomas*, 605 F.3d 300, 310

In *Hython*, the Sixth Circuit examined an affidavit for staleness. 443 F.3d at 486–87. The affidavit referenced a single controlled buy at the property searched but revealed no "further police investigation . . . whatsoever." *Id.* at 486. Further, it offered "no clue . . . when this single controlled buy took place." *Id.* And "without a date *or even a reference to 'recent activity,'* etc., there [was] . . . no way to begin measuring the continued existence of probable cause." *Id.* (citing *United States v. Williams*, 480 F.2d 1204, 1205 (6th Cir. 1973)) (emphasis added). So, "[b]ecause probable cause has a durational aspect" and requires "at least some temporal reference point," the court held that the affidavit's information was stale because it was not specific enough to establish an ongoing drug enterprise. *Id.* (citing *United States v. Harris*, 403 U.S. 573, 579 n.\* (1971)).

Contrary to Defendant's claim, *Hython* does not require affidavits to include dates of controlled buys for a court to use the buy in a staleness inquiry. Rather, *Hython* requires only that the controlled buy in an affidavit include "some temporal reference" to corroborating information. *Id.* And *Hython* suggests that a date is sufficient—but not necessary—to satisfy this temporal reference requirement. *Id.* Indeed, *Hython* implies that a "reference to recent activity" is also adequate. *Id.*

A couple of points reinforce this reading of *Hython*. First, the Sixth Circuit has—in multiple cases—approved affidavits that featured information without dates, noting that it did not render the information stale. *See United States v. Williams*, 480 F.2d 1204, 1205 (6th Cir. 1973); *United States v. Church*, 823 F.3d 351, 356 (6th Cir. 2016) ("[W]hat counts is the affidavit's content, not its technical perfection."); *United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017) ("It would . . . have been preferred for [the affiant] to have indicated the specific dates, but the fact

---

n.9 (6th Cir. 2010) (noting that refresh evidence served "as corroborating evidence" that the relevant drug crime was "ongoing").

that all of the multiple and repeated activities were observed within a defined period of less than seven weeks prior to the date of the affidavit" rendered the information specific enough).

Second, an army of controlling cases contained affidavits with similar or identical language to BAYANET's affidavit here, and those courts used the affidavits' information to reject staleness arguments. *See United States v. Harris*, 403 U.S. 573, 579 n.* (1971) ("within the past 2 weeks"); *United States v. Pinson*, 321 F.3d 558, 561–65 (6th Cir. 2003) ("[w]ithin the last 72 hours"); *United States v. Rodriguez-Suazo*, 346 F.3d 637, 646–47 ("within the past forty-eight hours"); *United States v. Johnson*, 351 F.3d 254, 258–60 (6th Cir. 2003) ("within the past 72 hours"); *United States v. Jackson*, 470 F.3d 299, 303, 308 (6th Cir. 2006) ("[w]ithin the past three days"); *United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012) ("within the last 72 hours"). In other words, so long as the affidavits announced *some* temporal reference point, the dogs did not bark.[5]

All in all, *Hython* does not prevent this Court from considering BAYANET's second and third controlled buys that it executed at the 4th and 25th Street Properties "within the . . . 72 hours" before it got a search warrant. In effect, this means that the information in BAYANET's affidavit is—at worst—three days old.[6]

---

[5] To pile on, a practical consideration counsels against requiring a specific date for controlled drug buys rather than a general time frame: the undercover nature of drug buys. If courts require a particular date for the drug buy, it could expose the identity of the undercover agent or confidential informant executing the buy. Indeed, a defendant could deduce who bought from them on that date. In the end, a specific date requirement would needlessly undermine the Government's privilege to protect informers' identities. *See generally Roviaro v. United States*, 353 U.S. 53, 59–60 (1957) (discussing this privilege).

[6] Because BAYANET's second and third controlled drug purchases defeat Defendant's staleness claim as explained below, this Court need not address Defendant's alternative argument that the BAYANET detective's day-old observations cannot trounce a staleness claim. *See* ECF No. 19 at PageID.75.

**b.**

With that threshold issue addressed, BAYANET's affidavit, no doubt, details ongoing drug trafficking, not a chance encounter. Indeed, the affidavit notes that BAYANET executed its first drug buy from Defendant on December 2, 2020. ECF No. 19-1 at PageID.81. It states that fifteen months later, BAYANET obtained credible information that Defendant was still trafficking drugs. *Id.* It alleges that three months later, BAYANET executed two controlled purchases "within the . . . 72 hours" before getting a warrant, one from the 4th Street Property and one from the 25th Street Property. *Id.* at PageID.81–82. It details continued surveillance. *Id.* at PageID.81–83. And it declares that on the eve of applying for the warrant, a BAYANET detective saw Defendant engage in actions consistent with drug trafficking when Defendant received a trash bag with suspected drug paraphernalia at the 4th Street Property and then drove to the 25th Street Property. *Id.* at PageID.83.

So, taken together, the affidavit describes an over eighteen-month investigation into Defendant's drug trafficking, including three controlled buys and numerous other observed drug-trafficking-related activities. The alleged crime is thus best characterized as ongoing drug trafficking. This means the first factor favors the Government, suggesting three-day-old information is not stale. And because "evidence of ongoing criminal activity . . . generally defeat[s] a" staleness claim, *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001), the information is likely not stale.

**2.**

Moving to the second factor—what the Sixth Circuit calls "the criminal"—courts ask whether the defendant was "nomadic or entrenched" based on the affidavit's information. *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006). If the defendant was entrenched, it is less

likely that the affidavit's information was stale. *Id.* at 573. A defendant was entrenched when there is little "indication that [the defendant] moved from place to place" or lacked consistent contact with the local area embracing the searched property. *Id.*; *see also United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014).

Here, the affidavit shows that Defendant was entrenched. Almost everything in the affidavit describes Defendant's continued contact with Saginaw, Michigan, where the 4th and 25th Street Properties are located. *See generally id.* at PageID.80–87. True, the affidavit notes that in 2020, Defendant changed his parole address from the 25th Street Property to a residence in Muskegon, Michigan. *Id.* at PageID.83. But BAYANET's investigation from 2020 to 2022 suggests that Defendant remained in Saginaw. *See id* at PageID.81–83. All said, there is little "indication that Defendant moved from place to place" or lacked consistent contact with Saginaw, meaning Defendant was entrenched when BAYANET applied for its warrant. *Abboud*, 438 F.3d at 572. Thus, the second factor favors the Government, supporting that the three-day-old information in BAYANET's affidavit was not stale.

### 3.

Turning to the third factor—"the thing to be seized"—courts analyze whether the item was "perishable and easily transferrable or of enduring utility to its holder." *United States v. Abboud*, 438 F.3d 554, 573 (6th Cir. 2006). Because drugs are easy to consume and move, this factor often benefits defendants charged with drug crimes. *See United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009). But it does not *per se* benefit defendants in drug cases. *See United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017). Indeed, when an affidavit contains evidence of ongoing drug trafficking, it is more probable that officers will find drugs at the searched property. *See United States v. Church*, 823 F.3d 351, 356 (6th Cir. 2016) ("[W]here an affidavit indicates that someone

keeps a ready supply of [drugs] in his" residence, it "shows that [drugs are] likely there now."). And when the warrant seeks nonperishable items on top of drugs, the fact that drugs are easy to consume and move is less relevant. *United States v. Sinclair*, 631 F. App'x 344, 348 (6th Cir. 2015).

On balance, the third factor favors the Government here. While the affidavit included perishable drugs, ECF No. 19-1 at PageID.80–81, these drugs were from an ongoing drug trafficking operation. Indeed, the affidavit indicates that Defendant kept a ready supply of drugs at the 4th and 25th Street Properties, *see id.*, weighing against staleness. *Church*, 823 F.3d at 356. Further, BAYANET sought nonperishable items that had enduring utility to Defendant. For example, BAYANET sought firearms, records, and drug paraphernalia, ECF No. 19-1 at PageID.80–81, counseling against staleness. *See Sinclair*, 631 F. App'x at 348 (stating that an affidavit including firearms, records, and drug paraphernalia counsels against staleness). And BAYANET sought computers, photographs, and other electronic evidence, ECF No. 19-1 at PageID.80–81, further militating against staleness. *See United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009).

**4.**

Finishing with the fourth factor—"the place to be searched"—courts evaluate whether the searched property was a "mere criminal forum of convenience or secure operational base." *United States v. Abboud*, 438 F.3d 554, 573 (6th Cir. 2006). When a searched property is a defendant's registered business, the property is often considered a "secure operational base." *Id.* at 574. And a property is a "secure operational base" when the affidavit contains information that a defendant has used that property on multiple occasions for criminal activities. *Sinclair*, 631 F. App'x at 348.

Here, the 4th and 25th Street Properties were Defendant's secure operational bases. The affidavit states that the 25th Street Property was Defendant's registered business. ECF No. 19-1 at PageID.83. Not to mention, BAYANET executed its third drug buy at the 25th Street Property, and a credible informant reported that Defendant often sold drugs there. *Id.* at PageID.82. As for the 4th Street Property—the affidavit states that BAYANET observed Defendant use this property multiple times for drug-related activities, including its second drug buy. *See id.* at PageID.81–83. Thus, the fourth factor weighs against staleness and favors the Government.

In sum, all four staleness factors favor the Government, meaning the three-day-old information in BAYANET's affidavit was not stale. So, there was a fair probability that BAYANET would find the evidence it sought at the 4th and 25th Street Properties. As a result, BAYANET's affidavit established probable cause to search.

**B.**

Shifting to Defendant's second argument, because the information in BAYANET's affidavit was not stale, this Court need not address the good-faith issue. *United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014); *United States v. Mills*, 357 F. Supp. 3d 634, 651 (E.D. Mich. 2019). But "for . . . completeness," *Mills*, 357 F. Supp. 3d at 351, even if the information were stale, the good-faith exception applies here.

The good-faith exception rests on "well-tilled legal terrain." *United States v. Sanders*, 106 F.4th 455, 467 (6th Cir. 2024). In general, unlawfully seized evidence is inadmissible in criminal proceedings. *Id.* The Constitution does not require this inadmissibility. *Id.* Rather, it flows from a "judicially crafted remedy for Fourth Amendment violations" called the exclusionary rule. *Id.* (citing *Utah v. Strieff*, 579 U.S. 232, 237 (2016)). The exclusionary rule's "purpose is to deter police misconduct." *Id.* But because good-faith conduct is not often "misconduct," when "an

officer acts with an objectively 'reasonable good-faith belief' that her conduct is lawful, exclusion is unwarranted." *Id.* (quoting *Davis v. United States*, 564 U.S. 229, 239 (2011)).

Enter the good-faith exception—if an officer conducts a search "in good faith reliance on a judicially authorized warrant," then "suppression is not . . . available," even if the warrant lacked probable cause. *Id.* at 467–68 (citing *United States v. Leon*, 468 U.S. 897, 909, 922 (1984)). This is because any "error in the probable cause calculus likely belongs to the judicial officer issuing the warrant, not the officer seeking it." *Id.* at 468 (citing *Davis*, 564 U.S. at 239). And courts do not "customarily expect an officer to second guess a judge's probable cause determination." *Id.*

Still, there are four instances where the good-faith exception is inapplicable—consider them exceptions to the exception:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;
>
> (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police;
>
> (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
>
> (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007) (cleaned up).

Defendant seems to assert that the third scenario—the "bare bones" affidavit scenario— applies here. *See* ECF No. 19 at PageID.71, 76–77 (relying on *United States v. Hython*, 443 F.3d 480 (2006), which addressed this third situation). To that end, Defendant argues that "no well-trained officer could reasonably rely on the affidavit, given that it relied on two undated controlled

purchases." *Id.* at PageID.71. At the outset, Defendant faces an uphill battle with this argument: the third scenario is a far lower standard than probable cause and applies only to "those affidavits that consist of no more than a hunch that evidence might be found at a location." *United States v. Neal*, 106 F.4th 568, 572 (6th Cir. 2024).

Here, Defendant loses the uphill battle—BAYANET's affidavit displays more than a mere hunch that it would find evidence of drug trafficking at the 4th and 25th Street Properties, so the good-faith exception applies. Again, the affidavit describes two recent controlled drug buys from the properties, multiple tips about drug sales from seemingly credible sources, continued surveillance of the properties, and over eighteen months of investigating Defendant's drug sales. ECF No. 19-1 at PageID.81–83. Notably, cases with affidavits with the same or less information passed probable cause muster, meaning this six-page affidavit shatters the far lower "bare bones" standard. *See United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012) (collecting cases); *see also United States v. Sanders*, 106 F.4th 455, 470 (6th Cir. 2024) (noting that cases featuring affidavits that pass muster in similar circumstances warrant applying the good-faith exception because courts "do not ask nonlawyer officers to discern the fine legal distinctions between one case and the next, let alone take heed from those that the affidavit here was out of bounds.").

In the end, the search warrant in this case survives. Indeed, the warrant's supporting affidavit was not stale. And even if it were, the good-faith exception applies because BAYANET reasonably relied on the judicially authorized search warrant. Thus, Defendant's Motion will be denied.

## IV.

Accordingly, it is **ORDERED** that Defendant's Motion to Quash, ECF No. 19, is **DENIED**.

- 16 -

- 17 -

**This is not a final order and does not close the above-captioned case.**

Dated: September 18, 2024                     s/Thomas L. Ludington
                                                                                                                   THOMAS L. LUDINGTON
                                                                                                                    United States District Judge